# CHARLESTON.

## WILLIAMS v. GILLESPIE.

Submitted January 16, 1888.—Decided January 28, 1888.

1. PARTNERS AND PARTNERSHIP—SECURING CREDITORS.

One partner has the right to convey the partnership effects (other than real estate) to a trustee to secure the creditors of the partnership, in the absence of his co-partners. (p. 589.)

2. PARTNERS AND PARTNERSHIP.

When all the partners are present, they have a right to be consulted, but, if some of them are out of the State, then the managing partner may convey the trust-property to secure one or more of the firm-creditors, and thus give to them a preference. (p. 589.)

3. LIEN—PURCHASE-MONEY.

The vendor of personal property has no implied or equitable lien on the property for the purchase money. (p. 590.)

4. LIEN—PLEDGE.

An agreement to pledge personal property for the security of a debt is ineffectual to create a pledge of or lien on the property unless the property is put in the possession of the pledgee. (p. 591.)

5. LIEN—TRUSTS AND TRUSTEES.

The owner sells the timber on his land at a gross price, to be paid as the timber is taken off the land, and gives to the purchaser the right to locate his mill on the land for the purpose of manufacturing the timber into lumber. The purchaser, without paying for the timber, cuts and removes it to his mill, where it is made into lumber, and stacked on the land. The purchaser then

conveys the lumber by trust-deed, to secure *bona fide* creditors.
*Held:*

> The vendor of the timber has no right or lien on the lumber, as against the rights of the creditors secured in such trust-deed.  (p. 592.)

*R. C. McClaugherty* for appellants.

*Johnston & Reynolds* for appellee.

SNYDER, JUDGE :

On August 24, 1882, B. P. Williams executed and delivered to I. T. Gillespie, for Gillespie & Lindsay, a writing in the words following: "I have this day sold to the firm of Gillespie & Lindsay all the poplar, from 22 inches up to the largest size, on a boundary of land shown to I. T. Gillespie and Wm. Calfee; also all the walnut in the same boundary; with the privilege of a mill-site, and the right of way through his land for the hauling of other timber to said mill-site, and the moving of the lumber when manufactured to the line of the East River R. R., free of charge to the said Gillespie & Lindsay.  For which the said Gillespie & Lindsay agree to pay the sum of $230.00, all of which is to be paid as the timber is taken off said land."  Soon after the date of this contract, Thomas E. Gillespie, the acting partner of the firm of Gillespie & Lindsay, placed a saw-mill upon the land, and began and continued to cut the timber from the land, and remove it to their mill, where it was manufactured into lumber, and stacked upon the premises.  One dollar was paid on the timber at the date of the contract, and the residue of the $230.00 remained unpaid.  In September, 1883, Williams made an affidavit, upon which he obtained from a justice an attachment, and had it levied upon the lumber as the property of Gillespie & Lindsay to pay the purchase-money still due him.  Upon the promise of Gillespie that the lumber should not be removed until Williams was paid, he dismissed his attachment suit.  Afterwards, by deed dated July 7, 1884, which was duly recorded in Mercer county on the day of its date, Thomas E. Gillespie, as a partner and on behalf of the firm of Gillespie & Lindsay, conveyed said lumber to L. L. Hern, as trustee, to secure certain specified debts due to S. B. Zink, A. J. Davis and others, by the firm

of Gillespie & Lindsay. After this deed had been recorded, Williams in August, 1884, made another affidavit, and obtained a second attachment from a justice, which he caused to be levied upon said lumber to pay $242.74, the amount he claimed to be due him from Gillespie & Lindsay. For this sum the justice gave judgment against said firm, and made an order for the sale of the lumber. In January, 1885, L. L. Hern, the trustee in the aforesaid trust-deed, advertised the lumber therein conveyed for sale, and, before the sale was made, B. P. Williams filed his bill in the Circuit Court of Mercer county against the firm of Gillespie & Lindsay, and the trustee and the *cestuis que trust* in said trust-deed, for the purpose of enjoining any sale of said lumber by said trustee, and having the lumber sold, and the proceeds applied to the plaintiff's debt. The defendants other than Gillespie & Lindsay answered the bill. Proofs were taken. The lumber was sold by order of the court, and so much of the proceeds as equalled the plaintiff's claim was directed by the final decree to be paid to the plaintiff; and the defendant, A. J. Davis, having died during the progress of the suit, his administrator obtained this appeal. The appellant contends that the decree of the Circuit Court is erroneous, because, according to the settled law, when applied to the case made by the record, the bill should have been dismissed. On the other hand, the appellee, Williams, insists that the said decree is right; and in support of this position he claims that he was entitled to the relief granted him upon one or all of the following grounds: *First,* the trust-deed, having been made by only one of the partners, is, at the most, but an executory assignment, and not a valid conveyance, such as will of itself transfer to the trustee the right and title to the property; *second,* the sale of the timber being a sale of real estate, the plaintiff held a vendor's lien upon the timber for the purchase-money; and, *third,* the lumber was held by the plaintiff as a pledge for the amount due him. I shall consider these grounds in their order.

1. Did the trust-deed vest in the trustee the title to the lumber in controversy? In *Anderson* v. *Tompkins,* 1 Brock. 456, (decided by Marshall, C. J., in 1820,) it was held that

"one partner has the right to convey the partnership effects (other than real estate) to the creditors of the firm in payments of their debts,—either to the creditors directly, or through the intervention of trustees; and, if *bona fide*, the deed will not be set aside, although the consent of the other partner was not obtained. When all the partners of a mercantile firm are present, they have a right to be consulted in giving a preference to particular creditors, but this necessity is dispensed with if one of the partners is absent in a foreign country. The doctrine that a partner cannot bind his co-partner by deed does not apply to a case in which the property purported to be conveyed by the deed is of such a description that a title to it passes by the mere act of delivery. The mere circumstances of affixing a seal to the instrument of conveyance, in such case, does not annul a transfer so consummated." Referring to the opinion of Marshall, C. J., in this case, Judge Carr, in *McCullough* v. *Sommerville*, 8 Leigh, at page 433, says: "Following this high authority, I conclude that a partner has a right to convey the social effects (save real estate) to trustees to pay specified creditors of the firm; and this, without the consent of his co-partner, where that co-partner resides out of the State, and the grantor is the sole manager of the concern." And in the same case, at page 436, Judge Cabell says: "That one partner living in this State, and having the management of all the business of the company, (the other partners residing out of the State) has the power to deliver over and assign the goods and choses in action of the company to the creditors of the company, in discharge of the partnership debts, is too clear, in my opinion, to require either argument or authority. If he can do this directly, I think it equally clear that he may indirectly, by delivering and assigning to an agent or trustee, to be applied in payment of the partnership debts. And, if he may do this as to all the creditors, he may do it as to any one or more of them; and hence he may give a preference to a particular creditor, or to a class of creditors, although the consequence of such preference may, in case of a deficiency of funds, defeat the claims of postponed creditors." And the decision of the court was an affirmance of the doctrine thus declared. This

decision has ever since been considered the settled law in Virginia, and it is therefore the law of this State. *Gordon* v. *Cannon*, 18 Grat. 387, 404; Burrill, Assignm., §§ 43-64; Pars. Partn. (166,) 181. The record in the case at bar shows that Lindsay, one of the partners, is a non-resident of this State, and that Thomas E. Gillespie, the partner who executed the deed, was the business and managing partner of the firm; and the fact that the trustee in the deed had advertised the lumber for sale, and the plaintiff found it necessary to resort to an injunction to prevent the sale, is sufficient evidence to establish the fact that the lumber had been delivered to the trustee, and that it was in his possession before this suit was instituted. It is apparent, therefore, according to the principles of law above stated, that the trust-deed was a valid conveyance of the lumber to the trustee, L. L. Hern, and that by the settled law of this State the said trustee was a purchaser for value. *Mining Co.* v. *Coal Co.*, 8 W. Va. 406.

2. It is next contended that the contract of sale by Williams to Gillespie & Lindsay, being a sale of timber on land, was a sale of real estate, or an interest therein, and, as the contract was executory, Williams held a vendor's lien for the purchase-money. This proposition is undoubtedly correct, and applied to this case so long as the timber constituted a part of the realty. But when the timber was severed from the realty, removed to the mill, and there converted into lumber, it became personal property, and the doctrine of vendor's lien ceased to have any application to it. It is not questioned that, when there is a sale of personal property to be paid for on delivery, the vendor has a lien for the price so long as the property remains in his possession; but the transfer or surrender of possession by the vendor, even at common law, destroyed any such lien. *James* v. *Bird*, 8 Leigh 510; *McCandlish* v. *Keen*, 13 Grat. 629. Here Williams, by permitting the vendees of the timber to cut and remove the same to their saw-mill, and there manufacture it into lumber, abandoned his possession, or, rather, allowed the vendees to take possession of it. It is true, the mill was on a part of the land upon which the timber grew, but the timber was entirely severed from the realty, and taken to the

mill, where other timber besides that of Williams was converted into lumber. The fact that the lumber was on the same tract of land from which the timber was cut, would in no manner identify or distinguish it from lumber manufactured from timber cut from other lands. It would furnish no means by which a purchaser without notice could be protected; and therefore, if we should hold that the vendor's lien followed the timber, and continued after it had been converted into lumber, simply because the lumber still remained on a part of the land from which it had been severed, we would not only violate settled principles of law, but open the door for fraud, and endanger the rights of innocent purchasers.

3. It is further contended for Williams that, independent of his original contract, the lumber was pledged to him by Gillespie & Lindsay as a security for his debt. This contention is based on the fact that Gillespie & Lindsay, in consideration of his releasing the lumber from the attachment which he had caused to be levied upon it in September, 1883, agreed that the lumber should not be removed from the mill until it was fully paid for. The lumber at that time was, as we have seen, in the possession of Gillespie & Lindsay, and there is not a particle of evidence that they then, or at any subsequent time, delivered the lumber to Williams. Without such delivery, the agreement to pledge the lumber amounted to nothing, as against the rights of the appellant, and other purchasers without notice. Possession by the pledgee is indispensable to constitute a pledge, or to create a lien upon the thing pledged. 3 Pars. Cont. 271. The plaintiff, Williams, never obtained possession of the lumber, and of course he never acquired any lien by reason of the agreement to pledge it to him. We have before shown that the mere fact that the lumber was on the land of Williams, which had been leased to Gillespie & Lindsay, did not confer upon him the possession. The fact that he had on two different occasions made affidavit that the lumber was the property of the firm of Gillespie & Lindsay, and caused it to be attached as such, confirms the fact that it was not in his possession; and the release of the lumber after the first attachment shows that he intended that the possession should

continue with Gillespie & Lindsay. It seems to me clear that the plaintiff was not entitled to any relief, and that his bill should have been dismissed. If we concede not only that the plaintiff, by the terms of his contract for the sale of the timber, was entitled to retain the timber until it was paid for, but that he was entitled to a lien on it after it had been converted into lumber, still, as he did not have his contract recorded, the same was inoperative and void, as against the trustee and *cestuis que trust* in the deed under which the appellant claims. There is no pretense of proof that these are not all *bona fide* purchasers without notice of the plaintiff's claim or lien on the lumber. It is expressly declared by our statute that any limitation or reservation, by way of condition or otherwise, of the title or use of goods or chattels the possession whereof shall be in another, the absolute property shall be taken to be with the possession, and such reservation or limitation be void as to creditors of and purchasers from the person so remaining in possession, unless such reservation or limitation be in writing, and duly recorded. Section 3, ch. 74, Code. In this case the contract was never recorded; and there being no attempt to prove that the debts secured are not *bona fide*, or that either the trustee or the beneficiaries in the trust deed had notice of the plaintiff's claim to or lien on the lumber, the said contract was void as to said trustee and creditors.

It follows, therefore, that the plaintiff's bill should have been dismissed by the Circuit Court; but that court having ordered the lumber to be sold, and a sale thereof having been made, and the proceeds remaining under the control of that court, this Court will not now dismiss the plaintiff's bill. It is, however, ordered that the final decree of March 12, 1886, be reversed, and the cause remanded to the Circuit Court, with direction to that court to order the fund arising from the sale of the lumber in the bill mentioned, to be paid over to the creditors secured in the trust deed of July 7, 1884, according to their respective rights and priorities, as prescribed in said deed, and that the plaintiff, Williams, be ordered to pay the costs of the defendants in the Circuit Court in this cause.

REVERSED.   REMANDED.