# CHARLESTON.

DOWNEY, RECEIVER V. THE NATIONAL FIRE INSURANCE COMPANY.

Submitted November 23, 1915.   Decided December 14, 1915.

1. SPECIFIC PERFORMANCE—*Rights of Parties—Determination.*
    The general rule is that the rights of the parties as they stand at the date of the decree of specific performance govern, and not as they stood at any preceding time.   (p. 393).

2. INSURANCE—*Contracts—Construction.*
    The rule of strict construction is especially applicable to the contracts of insurance.   (p. 394).

3. SAME—*Policy—Forfeiture Provision—Incumbrance.*
    A mortgage or deed of trust purporting to secure an obligation not yet effective at the time of the loss is not an encumbrance of personal property by chattel mortgage, voiding a policy of insurance thereon, in the form prescribed by statute, containing such condition of forfeiture.   (p. 394).

4. SAME.
    Nor will an unexecuted contract to pledge such obligation as collateral for a pre-existing debt, constitute such encumbrance so as to avoid a policy of insurance.   (p. 394).

5. SAME—*Pleading—Action on Policy—Admissions—Conclusiveness.*
    Admissions in pleadings or in proofs of loss of the fact of such pledge, not consummated by performance of the condition of the contract, are not conclusive, and may be explained in connection with proof of the facts pertaining thereto.   (p. 396).

6. SAME—*Policy—Condition Against Incumbrances—Breach.*
    An agreement to pledge such an obligation, or an intent to pledge the same on condition, are not sufficient to constitute such pledge unless the condition of the contract has been complied with.   (p. 397).

Error to Circuit Court, Berkeley County.
Action by William W. Downey, receiver, etc., against the

National Fire Insurance Company of Hartford, Connecticut. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*John W. Davis, Allen B. Noll* and *W. Calvin Chesnut,* for plaintiff in error.

*Malcolm Jackson* and *J. O. Henson,* for defendant in error.

MILLER, JUDGE:

An action upon a policy of fire insurance, New York Standard form, countersigned by defendant's agents at Martinsburg, West Virginia, January 23, 1912, insuring The Stewart Vehicle Company, for the term of one year, against all direct loss or damage by fire, to an amount not exceeding three thousand dollars, on their buggies manufactured and in the process of manufacture, their own or held in trust on commission or sold but not delivered, etc., while situated in their three story and basement brick building, in Martinsburg, West Virginia.

The fire destroying the entire plant and property of the assured occurred on September 15, 1912. There was a verdict and judgment for plaintiff for the full amount of the policy.

The provision of the policy alleged to have been violated by the assured, and relied on as a defense to the action, is as follows: "This entire policy * * * shall be void if * * * the subject of insurance be personal property and be or become encumbered by a chattel mortgage."

The appointment and qualification of plaintiff as special receiver, and the contract of insurance, and the total loss of the property insured, having been fully established by proof, or the admissions of defendant, and with like proof that the total amount of the insurance carried on the stock of merchandise destroyed was $80,500.00, plaintiff rested.

The defendant then undertook to establish its defense by the evidence of plaintiff William W. Downey, and, in connection with his testimony, by the proofs of loss made by him, and Claude W. Stewart, vice president and general manager, and by the introduction of the bill of complaint in the cause in which Downey had been appointed special receiver, and a deed

of trust dated June 22, 1912, purporting to have been made and executed by The Stewart Vehicle Company to the said Downey, trustee, pursuant to the authority of its stockholders and board of directors by resolutions duly passed in stockholders' and directors' meetings, June 22, 1912, and covering by description the entire plant and property of the grantor, and which resolutions, as recited in said deed of trust, authorized the creation of an indebtedness by said company for the purpose of refunding its present indebtedness and for additional working capital to the amount of fifty thousand dollars, by an issue of two hundred and fifty first mortgage, fifteen years, six per cent. gold bonds, to be secured by first mortgage or deed of trust upon all the property, real, personal and mixed, and all the rights, privileges and franchises of said corporation then owned or thereafter to be acquired, said bonds and deed of trust, to be upon such terms and in such form and contain such conditions and stipulations as the board of directors should determine, and on the face whereof it was provided that said bonds might be redeemed on the fifteenth day of January and July, of any year subsequent to the fifteenth day of July, 1917, as stipulated therein, said bonds and the interest coupons to be without preference, priority, or distinction as to lien or otherwise, of any one bond over any other bond, by reason of priority in the time of issue, or otherwise.

And another of the provisions of said deed of trust is: "The Company will take out and pay the premium upon such fire insurance, upon the insurable property of the company, as the Trustee may reasonably require, and the policies therefor shall be made payable to the Trustee and shall be delivered to the Trustee."

Though purporting to have been made June 22, 1912, said deed of trust was not signed or executed on behalf of said company by its officers, or acknowledged by them, until August 16, 1912, and the same was not admitted to record until September 12, 1912.

And as showing or tending to show the existence of said deed of trust as an encumbrance upon the property insured, voiding the policy, defendant relied especially upon the allegation in plaintiff's said bill and the statement in said proof of

loss, to the effect that the property insured belonged exclusively to The Stewart Vehicle Company, subject to a bonded indebtedness of sixty thousand dollars, bonds owned by assured, but hypothecated with the Maryland Surety & Trust Company, to secure a commercial paper loan of twenty two thousand dollars, and the evidence of the witness Downey, in connection therewith, that prior to the fire, about August 19, 1912, he, as trustee in the deed of trust, had certified the bonds as provided thereby, and had participated in delivering the bonds into the possession of the Maryland Surety & Trust Company, or more accurately speaking, into the hands of John M. Lane, secretary and assistant treasurer of said company, and which was done prior to the recordation of said deed of trust, September 12, 1912.

To rebut, or explain, defendant's evidence, and the conclusions sought to be drawn therefrom, that said bonds and mortgage or deed of trust constituted an existing encumbrance on the property at the time of the fire, plaintiff proved by said Lane, secretary and assistant treasurer, and a bookkeeper, of the Maryland Surety & Trust Company, that the indebtedness of said company against The Stewart Vehicle Company commenced about September, 1909, the original loan being ten thousand dollars; that later, date not definitely given, this debt was increased by another loan of twelve thousand dollars, and afterwards by a third loan, with some invoices or accounts receivable pledged as collateral, so that at the end of the year 1911, said indebtedness had grown to between twenty-five and thirty thousand dollars, and that in the spring of 1912, it amounted to between twenty-six and twenty-seven thousand dollars, evidenced by three notes, one of ten thousand dollars, one of twelve thousand dollars, and one of seventy-two hundred dollars, with some credits on it, said notes being numbered respectively, 35413, 35414, and 35735. The witnesses explained that when notes are discounted by said bank, they are numbered regularly, so that every note which belongs to the bank has a number on it by which it is entered on its books. The first two of these notes introduced in evidence bear date December 30, 1911, the last one January 13, 1912.

And in explanation of the statements in said bill and proof

of loss the witnesses Downey, Stewart and Harris say that the bill was prepared at night time, under the emergencies occasioned by the fire, and that the proofs of loss were prepared by adjusters, and verified, without a full understanding of the status of the proceedings by which said bonds were to become pledged as collateral security to the Maryland bank.

Plaintiff proved, furthermore, that the contract of the Vehicle Company with the Maryland bank, and as to which there is not the slightest controversy, was that on condition that said bank would accept the new note of the Vehicle Company, for twenty two thousand dollars, with all arrears of interest paid on the old notes to date of the new, amounting to one hundred and eighty-three dollars and thirty-four cents, and surrender, cancel, and release the old notes and an old issue of bonds secured by deed of trust on the real estate of the Vehicle Company, the latter company would pledge its whole issue of fifty thousand dollars of said first mortgage bonds as collateral to the twenty-two thousand dollar note.

And it was also proven by the bank officers and the special receiver and the officers of the Vehicle Company, and not controverted, that a few days before the fire, and after negotiations begun as far back perhaps as June, 1912, these bonds had been placed in the hands of the Maryland bank, or Lane, its officer, then unsigned, but a day or two later signed by the officers of the Vehicle Company, and certified by Downey, trustee, in accordance with the provisions in the deed of trust, and that the deed of trust, securing the bonds, was delivered to Downey, and placed upon the public record, and that the note of the Vehicle Company for twenty-two thousand dollars had also been delivered to the bank. But it was also proved that at the time of the fire, September 15, the interest on the old notes had not been paid by the Vehicle Company in accordance with its contract; that the new note had not been finally accepted by the bank or numbered, or entered on its books as the property of the bank, and that the old notes had not been surrendered or cancelled, or the deed of trust, securing the old bonds pledged, surrendered or released by the bank, in performance of the contract on its part, and so as to make a completed transaction.

And as showing or tending to show that at the time of the

fire the contract of pledge still remained inchoate, or in fieri, plaintiff introduced in evidence certain letters passing between Lane, the bank officer, and the Vehicle Company, or its officers. In the first of these letters Lane wrote the Vehicle Company, September 7, 1912: "We have not as yet received new note for $22,000, which was given you some time ago to take up your old notes for $10,000 and $12,000, respectively, nor have we been advised by you that the new deed of trust, that secured an issue of $50,000 in bonds, has been recorded. If this has not been done, kindly advise us early Monday morning over the telephone the cause for the delay." In the second, the Vehicle Company, September 9th, replied: "We received your letter of the 7th instant and note what you say relative to note and recording of deed of trust. We are enclosing, herewith, note, and will say that deed of trust has been given to Mr. Downey. We tried to get him this morning, to see if he had put same on record. We presume he has. He will be home to night, when we will take the matter up with him and see that it is attended to promptly." In the third, not dated, but a day or two later, Lane answered: "We have your letter of the 9th, enclosing new note for $22,000. You neglected to enclose check for accrued interest on the old notes, amounting to $183.34, which kindly forward, and upon receipt of advice that the new deed of trust has been filed for record, we will return the old bonds for cancellation, so that the old deed of trust can be released. Kindly give the matter of having the new deed of trust recorded your immediate attention." It was not until after the receipt of this last letter that the deed of trust was placed upon record by the trustee.

Plaintiff also proved by the witness Lane, that the new note had not been finally accepted by the bank and the old notes, bonds, and deed of trust surrendered, cancelled, and released in accordance with the contract, because the interest on the old had not yet been paid by the Vehicle Company, and that he knew that before the final consummation of the contract, that not only the old insurance held by the bank, but the other insurance upon the property, would have to be transferred to or made payable to the trustee, as provided by the terms of the deed of trust, or else the whole of the insurance would

become invalidated and the security of the bank, old and new, jeopardized.

Plaintiff also proved a decree of the circuit court of Berkeley County, on bill filed by him against the Maryland bank, requiring defendant to surrender said bonds and notes for twenty-two thousand dollars, and a letter written by him to the defendant company, December 10, 1912, demanding payment of the loss, and in which he said among other things: "'In this connection, you are also notified that the attempted hypothecation of certain bonds owned by the, insured by certain employes of the said, The Stewart Vehicle Company, was not in fact an hypothecation thereof."

To discredit or impeach the evidence of these witnesses for plaintiff, defendant was allowed to prove and introduce in evidence a letter written by J. Clarence Lane, for the Maryland bank, to one of the attorneys for the insurance companies involved, dated November 13, 1912, in reply to a letter from him, as follows: "I learned from The Maryland Surety & Trust Company that three or four years ago they loaned the vehicle company ten thousand dollars ($10,000.00) and received as security therefor ten thousand dollars of bonds secured by deed of trust as a first lien on the property. Subsequently they made additional loans, which were secured by various notes. Then the company came with a proposition for the surrender of the bonds and the substitution of the bonds under a new deed of trust for fifty thousand dollars ($50,-000.00) of bonds, stating that a finance company in Chicago could sell the bonds for them. The bank agreed to this arrangement, and stated that upon the execution of the deed of trust, and the delivery of the entire issue of fifty thousand dollars ($50,000.00) of bonds, they would always surrender the old bonds and release the old deed of trust, and would hold the new bonds as collateral security for the obligations due the bank, and would deliver them as sold, and credit the proceeds upon the obligations until the indebtedness was liquidated. The $50,000.00 of bonds were delivered to The Maryland Surety & Trust Company, and were duly certified by Mr. Downey as Trustee. *The bank now holds both sets of bonds as security for the debts due.*"

And in connection with this letter defendant relies much on

the evidence of Lane, on cross-examination, to the effect, that he was pressing the Vehicle Company for additional security, and that before and at the time of the fire the bank was holding on to both sets of notes, and securities. What he meant by this must be determined with reference to the contract of pledge and the status reached in execution of that contract at the time of the fire, and his evidence in relation thereto.

Such are the main facts, uncontroverted, and upon which the rights of the parties to this controversy must be determined. That there was. a contract existent between the Vehicle Company and the Maryland bank, by which for the time being, and until its debt was paid, the bank was to take and hold the fifty thousand dollars of bonds secured by the new deed of trust, as collateral security, upon the conditions stated, is conceded; but whether that contract had been consummated, or so far consummated at the time of the loss, as to be binding on the parties, and to constitute the new deed of trust an existing chattel mortgage on the personal property of the Vehicle Company, without the consent of the defendant company, as to invalidate the policy of insurance, is the question presented for decision.

Recognizing the existence of the facts relied on by plaintiff, as showing or tending to show that the contract for the pledge of the bonds still remained inchoate, it was contended in argument, that the execution of the contract had so far progressed as to become binding, and if not consummated in all respects, enforcible at the suit of either party to the contract, and therefore creating an encumbrance on the property in violation of the terms of the policy. But assuming that the contract remained executory, but enforcible as argued, to what time, if specifically executed, either by voluntary act or by judgment or decree, would the execution thereof relate? Would it be the date of the contract, or the date of some intermediate step in the execution thereof, or the date of the final act or decree of specific performance?

The general rule seems to be well settled that the rights of the parties as they stand when the decree is rendered are to govern, and not as they stood at any preceding time. *Superior Oil & Gas Co.* v. *Mehlin,* (Okla.) 138 Am. St. Rep. 942; *Randel* v. *Brown,* 2 How. 406, 11th L. ed. 318; 3 Elliott on

Contracts, section 2359; *Peck* v. *Goodberlett,* 16 N. E. 350; *Pennsylvania Co.* v. *Bond,* 99 Ill. App. 535.

In coming to judgment in cases of this kind it is necessary to have in mind the rule of strict construction applicable to contracts of insurance. They involve many terms, conditions and warranties, intended always for the protection of the insurer, and properly so. And in most cases perhaps the insured does not closely examine these provisions of the contract, and often by oversight or inadvertence endangers his insurance, wherefore the rule of strict construction. *Tucker* v. *Colonial Fire Insurance Co.,* 58 W. Va. 30. Other cases so holding are *Weddington* v. *Piedmont Fire Ins. Co.,* 141 N. C. 234, 54 S. E. 271; *Pennsylvania Fire Ins. Co.* v. *Hughes,* 108 Fed. 497; *German-American Ins. Co.* v. *Yeagley,* 163 Ind. 651. 71 N. E. 897; *Sullivan* v. *Mercantile Town Mut. Ins. Co.,* 20 Okla. 460, 94 Pac. 676.

But the question we have here is not so much one of construction of the provision of the policy relied upon in defense, as what constitutes "encumbered by a chattel mortgage", within the meaning of that provision. It is not contended in this case that the making, executing and delivering of the deed of trust and bonds to Downey, trustee, or the custody of those bonds by the Maryland bank, or Lane, its officer, alone were sufficient to constitute a chattel mortgage within the meaning of the policy. To constitute them a lien the bonds would have to be disposed of by the mortgagor for a consideration, and with right of enforcement thereby given to the holder of the bonds. Whether at the time of the fire life and force had been breathed into these instruments by an executed contract of pledge of the bonds is the pivotal question for decision. In approaching this subject we are mindful of the fact that the parties on both sides of this controversy are battling for their technical legal rights. The defendant on the one hand is bound by the solemn obligation of its contract of insurance for a valuable consideration paid by the insured, and is seeking to avoid its liability upon strict legal grounds. This of course it has the legal right to do, for such was the contract of insurance. And so on the other hand the Vehicle Company, and its special receiver, invoke the rule of strict construction, that it may not lose the benefits of its con-

tracts of insurance, unless the facts necessarily call for that disastrous result.

The facts have already been stated. Illustrating the application of the rule of strict construction in cases of this kind, the holdings in the following cases are pertinent: A vendor's lien is not a chattel mortgage within the prohibition. *Pennsylvania Fire Ins. Co.* v. *Hughes, supra;* nor is a lien under a lease a violation of the clause. *Phoenix Ins. Co.* v. *Fleenor,* 104 Ark. 119, 148 S. W. 650; nor is a deed of trust from one partner to another a contravention of the clause, because it does not tend to make the insured any less careful of the property. *Delaware Ins. Co.* v. *Hill,* 127 S. W. 283; *Alston* v. *Phenix Ins. Co.,* 100 Ga. 287, 27 S. E. 981; *Moulton* v. *Aetna Fire Ins. Co.,* 25 App. Div. 275; nor is a mortgage paid before the fire, but not released, a violation of the promissory warranty. *Weigen* v. *Council Bluffs Ins. Co.,* 104 Iowa 410, 73 N. W. 862; *Meech* v. *Citizens Ins. Co.,* 147 Mich. 343, 110 N. W. 1078; *State Insurance Co.* v. *Schreck,* 27 Neb. 527, 43 N. W. 340, 20 Am. St. Rep. 696, 6 L. R. A. 524; per contra, *McKernan* v. *North River Ins. Co.,* 206 Fed. 984; *Imperial Fire Ins. Co.* v. *Coos County,* 151 U. S. 452; *Assurance Co.* v. *Grand View Bldg. Ass'n.,* 183 U. S. 308, 46 L. ed. 213; nor is a mortgage which secures an obligation not yet effective at the time of loss, an encumbrance of personal property by chattel mortgage. *Gilchrist Transportation Co.* v. *Phenix Ins. Co.,* 170 Fed. 279, 95 C. C. A. 475; *Rowland* v. *Insurance Co.,* 82 Kans. 220, 108 Pac. 118; *Hanscom* v. *Home Ins. Co.,* 90 Me. 333, 38 Atl. 324.

The last proposition, and the three cases cited in support of it, are particularly relied upon by the plaintiff in this case. These cases seem to us to support counsel's contention that the contract of pledge or security must be a completed one in order to create an encumbrance and avoid the policy. If completed it is conceded that the authorities cited by counsel for defendant apply with full force and there can be no recovery, so it becomes unnecessary to review those decisions.

With reference to the main proposition then let us consider the evidence. That the averment in Downey's bill of complaint, and the statement of the proof of loss, give color to

defendant's theory of a consummated contract, must be conceded; so also does some of the expressions in the evidence of Lane, the bank officer, and the admission in his last letter to the Vehicle Company, omitting to mention the subject of insurance. But Lane's explanation that the transfer of the policies of insurance to the trustee in accordance with the provision in the mortgage was clearly in his mind, and a subject which he intended to .give personal attention, when the other condition of the contract had been fulfilled by the Vehicle Company, and by the bank, considered in connection with the numerous delays and steps taken towards the final consummation of the contract, seems reasonable, and not a mere afterthought.

Admissions like thése in pleadings and proofs of loss are not conclusive, but are open to explanation by the parties, in connection with the proof of the actual facts. *City Five Cents Savings Bank* v. *Pennsylvania Fire Ins. Co.*, 122 Mass. 165, and other cases digested in 2 Berryman's Digest of the Law of Insurance, 1347.

The statements in the bill and proof of loss that the bonds were owned by the Vehicle Company, but had been pledged, depended upon whether the contract of pledge had been consummated, and the admission of the pledge of the bonds amounted rather to a conclusion of law than one of fact. Then, too, these statements involved admissions of fact inconsistent with the acknowledged terms of the contract, as did also the letter from Lane, attorney for the bank, to the attorney for the insurance company, relied on. By the admitted terms of the contract the bank was not entitled to hold both sets of bonds as collateral security for its debt. True, Lane, the officer in the bank, in his evidence, says, the bank was holding on to both, but this was after the fire, and before the legal rights of the parties with respect to these securities had been adjudicated, and what the witnesses said must be construed in the light of the surrounding facts and circumstances.

And now, after all that has been said, or that might be said by way of comment upon the evidence, controlling facts remain uncontroverted, namely, that at the time of the fire and destruction of the plant of the Vehicle Company, it remained

for the Maryland bank to accept the new note of the Vehicle Company, to surrender the old notes and bonds and release the old deed of trust; and it remained for the Vehicle Company to pay the interest on the old note to the bank. And then for the protection of all, and that the bonds secured by the deed of trust might not be endangered, that the policies of insurance, as provided by the very terms of the mortgage, should be transferred or made payable to the trustee. It will not do to say that these conditions of the contract between the Vehicle Company and the bank might have been waived. The conceded fact is they were not waived, and they existed independently of any admissions in pleadings or proofs of loss.

It seems to us useless to speculate as to what position the parties might have taken under other and different circumstances, as for example, if the defendant had not attempted to take advantage of the provision of its policy to defeat recovery. So far as the bank is concerned, the loss being total, and the insurance being sufficient to cover the debts of the company, it could have made no practical difference to it, whether the contract of pledge had been completed or not, the liability of the company to its creditors being fully covered by the insurance.

The contract to pledge the bonds was conditional, and not consummated in its inception. A mere intent to pledge or an agreement to pledge is not sufficient to constitute a pledge. Jones on Collateral Securities, section 28. To be effective the contract must be a completed thing. The minds of the parties must meet not only on the terms of the contract, but the conditions, if any, must be performed as in other cases. Jones on Collateral Securities, section 5, and cases cited; *Surber* v. *McClintic*, 10 W. Va. 236, 242.

The law of the case seems to have been fairly submitted to the jury in instructions given. We are, therefore, of opinion to affirm the judgment.

*Affirmed.*