METROPOLITAN LIFE INSURANCE COMPANY *v.* F. O. LAMB, *Receiver, etc.*

(CC 548)

Submitted February 4, 1936. Decided March 25, 1936.

*Mohler, Peters & Snyder,* and *Frank Ewing,* for plaintiff.

*Ritchie, Hill & Thomas* and *W. E. R. Byrne,* for defendant.

LITZ, JUDGE:

This is a suit to establish a preference against an insolvent bank.

On October 13, 1921, plaintiff, Metropolitan Life Insurance Company of New York, and Security Bank & Trust Company, a banking institution of Charleston, West Virginia, entered into a written contract whereby the bank agreed to act as correspondent for the insurance company for the purpose of submitting to the company for purchase loans secured by mortgages or deeds of trust and to collect and promptly remit to the company by New York Exchange the interest on and principal of such loans as might be purchased by the company. The bank was permitted under the agreement to retain collections of interest in excess of the rate the company would be entitled to receive. The contract also authorized its cancellation by either party mailing notice thereof to the other. The parties entered into a second written contract December 28, 1927, concerning the same subject matter, which did not, however, materially affect the first agreement. The state commissioner of banking closed the bank because of insolvency April 19, 1933, and later appointed defendant, F. O. Lamb, as receiver thereof. It is now in process of liquidation.

The bill alleges that "While acting as agent of the plaintiff for the collection and remittance of principal and interest, as aforesaid, Security Bank & Trust Company, having become insolvent many months before the 19th day of April, 1933, collected from sundry persons,

firms and corporations a large sum of money, to-wit, the sum of $68,017.69, representing payments on principal and interest, and payments on taxes on properties offered as security for the loans aforesaid, and such payments were made to the bank as agent of the plaintiff for collection and remittance by persons, firms and corporations liable to the plaintiff for the payment of such loans or having some interest in the payment thereof, and every portion of the sum last aforesaid, so collected by Security Bank & Trust Company, was collected by it upon the loans so purchased by the plaintiff and pursuant to the said contract of August 13th, 1921, and the modification thereof, as aforesaid, but the said Security Bank & Trust Company, disregarding its duties as such agent for collection and remittance aforesaid, wholly neglected and refused, though often thereunto requested by the plaintiff to pay to the plaintiff, the said sum of $68,017.69, or any portion thereof, and prior to the 19th day of April, 1933, paid to the plaintiff no portion of its said collections; since the date last aforesaid, the said F. O. Lamb, while he was acting as Examiner in Charge of said Security Bank & Trust Company, and since he was appointed and did qualify as Receiver, as aforesaid, has not paid the plaintiff any portion of said sum of money."

Upon the theory that the sums collected by the bank as agent of the insurance company constituted a trust fund in favor of the company, the bill prays that the claim of the plaintiff against the bank be accorded preferential consideration over all other debts except the expenses of the receivership.

The defendant demurred to the bill because it (1) does not deny that plaintiff was cognizant of the insolvency of the bank which is charged to have existed many months before the commissioner closed its doors; (2) does not allege that cash assets at least equal to the plaintiff's claim went into the hands of the receiver; (3) does not allege that a sum equal to the claim of the plaintiff remained in the bank from the time of the collections by the bank of the funds belonging to plaintiff

until the appointment of the receiver; (4) does not allege that the assets of the bank were augmented by the funds alleged to have been collected by it for the plaintiff; (5) does not allege that the assets of the bank passing into the hands of the receiver were augmented by funds alleged to have been collected by it for the plaintiff; (6) does not allege that the funds collected for the plaintiff can be identified in the hands of the receiver.

The court overruled the demurrer based upon the first ground on the theory it is not fairly inferable from the bill "that at any time during the making of the collections here involved, the insurance company had knowledge of the bank's insolvency." The demurrer predicated on the remaining grounds was sustained because the bill does not allege that "the trust fund or its product came into the hands of the receiver" and that the assets passing to the receiver were thereby augmented.

Counsel for plaintiff, in challenging the ruling sustaining the demurrer because the bill does not allege that the trust fund or its product came into the hands of the receiver and augmented the assets of the bank, say that the appropriation by the bank of the funds of the plaintiff created a trust *ex maleficio* and that the plaintiff should recover for the wrong to the extent of its loss and not upon the theory of ownership of the property. This distinction is accepted by a few courts. The majority rule, followed by the trial court, and recognized in *Ream's Drug Store* v. *Bank of the Monongahela Valley*, 115 W. Va. 66, 174 S. E. 788, as "the better rule," is stated in 3 Michie, Banks & Banking, (1931) sec. 203, as follows: " * * * according to the better rule the plaintiff may follow and reclaim a deposit which is impressed with the character of a trust fund, even though it has been mingled with other funds of the bank so that the identity of the deposit is lost, provided it has passed into and swelled the funds of the bank. And the doctrine that one can not follow trust money mixed with other money in an indistinguishable mass, because of its having no ear-mark, must be taken subject to the application of this rule. It is not important that the com-

mingled money bore no mark, and can not be identified. It is sufficient to trace it into the bank's vaults and find that a sum equal to it, and presumably representing it, continuously remained there until the receiver took it. The modern rules of equity require no more." The fact that the trust arises *ex maleficio* does not, according to the weight of authority, affect the rule.

We are, therefore, of opinion that the ruling of the circuit court was proper in so far as it sustained the demurrer. Was the decision erroneous to the extent that it overruled the demurrer? We think so. In view of the positive and affirmative allegations of the bill that the bank was insolvent for many months before its affairs were taken over by the state banking department, and that the funds in question were collected during that period from sundry persons, firms and corporations; and considering the further facts that plaintiff knew from its records, as alleged in the bill, when the payments constituting the fund in question were due, that the collecting agent was a bank which would be expected, if solvent, to promptly remit the collections, and that the plaintiff could have at any time withdrawn the authority of the bank, it would seem a fair inference, in the absence of denial thereof, that the plaintiff knew of the financial condition of the bank. From the facts disclosed by the bill, it would also seem to be a fair legal inference that the plaintiff, by permitting the bank to continue to collect and presumably use the funds, waived its right to insist that these collections should now be treated as a trust fund and accorded preference over the debts of other general creditors. "A cestui que trust, or one claiming to be such, who is competent to act for himself, may be estopped, or waive his right, to enforce a trust in his favor by words or acts on his part which, expressly or by implication, show an intention to abandon, or not to rely upon or assert, such trust, as by acquiescing, with knowledge of all the material facts, in the alleged trustee's acts in dealing with, or disposing of, the property in a manner inconsistent with the existence or continuation of a trust, * * * ". 65 C. J., p. 955.

In *Philadelphia National Bank* v. *Dowd, Receiver,* 38 F. 172, 2 L. R. A. 480, the court held that the fund collected by one bank for another under instructions for immediate return, lost its character as a trust fund by being allowed to remain for several months, in the hands of the collecting bank. Point 3 of the syllabus to the opinion, as reported in 2 L. R. A. 480, follows: "Where money collected by a bank for another bank, under instructions for immediate return, is allowed to remain for several months with the collecting bank, which becomes insolvent without having made return, the bank for which the collection was made, will not be considered a *cestui que trust,* but will be treated as an ordinary creditor." In *Cambridge Gas Co. et al.* v. *F. O. Lamb, Receiver of Charleston Trust Company,* an insolvent banking institution, 117 W. Va. 174, 184 S. E. 566, the plaintiffs contended that moneys deposited by the gas company in the savings department of the bank, as a sinking fund for the retirement of outstanding preferred stock, constituted a trust fund which should be accorded preference over common debts of the bank. The bank paid interest on the deposits. Upon the theory that the payment of interest on the deposits implied the right of the bank to use the money, it was held that the bank was liable as debtor and not as trustee of the fund. Likewise in this case it would seem a reasonable inference, from the facts and circumstances disclosed by the bill and exhibits, that the plaintiff permitted the bank to use the collections. The company, by permitting the bank to collect and retain the numerous sums of money over a period of many months during its insolvency, prolonged the life of the bank thereby inducing others to extend credit to it. In the opinion of the *Cambridge Gas Company* case, written by Judge Haymond Maxwell, it is said: "In dealing with a problem such as here presented, the courts must not lose sight of the silent parties to the controversy, though they may not be parties to the suit in court. The interested parties to whom reference is thus made are the general depositors and other simple creditors of the insolvent banking institution. To the extent that preference is given to a

depositor by holding that his deposit constituted a trust relationship between him and the bank, other depositors are prejudicially affected, because the amounts of their *pro rata* recoveries will thereby necessarily be lessened. A holding that would be followed by such disastrous consequences to other persons must not be made unless the justification therefor is clearly established."

Plaintiff relies upon Chapter 15, Acts 1931, commonly called the "Bank Collection Code," section 13 of which provides: "Where an agent collecting bank other than the drawee or payor shall fail or be closed for business as above, after having received in any form the proceeds of an item or items entrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books or on the books of any other bank which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank." This statute, in our opinion, applies only to the collection of commercial paper in the ordinary course of the banking business.

We, therefore, affirm the decree of the circuit court to the extent that it sustained the demurrer, and reverse the degree in so far as it overruled the demurrer.

*Affirmed in part; reversed in part; remanded.*