UNITED STATES STAMPING COMPANY *v.* O. H. GALL, *Receiver, et al.*

(CC 598)

Submitted February 7, 1939. Decided March 23, 1939.

McCamic & Clark, Charles E. Carrigan, J. L. Arnold, and Charles A. Newman, for plaintiff.
John C. Hopkins, for defendant.

Fox, President:

This case involves the sufficiency of an amended bill, filed by the United States Stamping Company, a corporation, against O. H. Gall, Receiver of the Mound City Bank, and the Mound City Bank, a corporation. A demurrer of the defendant to said bill was sustained by said court, and the correctness of its ruling certified.

The amended bill alleges that on the 9th day of March, 1933, at a time when, unknown to the plaintiff, the Mound City Bank was insolvent, the said bank negotiated for a loan of $15,000.00 in fourth loan 4¼% liberty bonds of the government of the United States, for which the said bank was to execute to the plaintiff its note for the sum of $15,000.00, to be endorsed by four directors of said bank, and further secured by the deposit as collateral of notes owned by the bank aggregating $30,000.00 and secured by first lien trust deeds. The loan was authorized by a resolution adopted by the plaintiff's board of directors on March 9, 1933, from which resolution it clearly appears that, as the plaintiff understood the transaction, the note to be taken was to be endorsed personally by four bank directors, and secured by collateral of "two to one" in trust deeds; and with the understanding that the

note should be paid as soon as the bank obtained a loan from the Reconstruction Finance Corporation, and to be paid in bonds, "the same as loaned." To show the understanding of the transaction on the part of the Mound City Bank, it should be noted that according to a paper purporting to be a copy of a resolution of the board of directors of the bank and furnished to the plaintiff on May 17, 1933, the date of the resolution not being disclosed, a resolution was adopted by it in the words and figures following:

> "On motion of Mr. Henderson, seconded by Mr. McNinch that this bank borrow from the U. S. Stamping Co. $15,000.00 Liberty Bonds and that we secure this loan of bonds by putting up the following notes: Monroe County Lumber Co. $12,500.00, W. W. and J. W. Henderson $9,000.00 and J. E. Bloyd, Jr. $5,000.00.
> "This note was signed by Mound City Bank and endorsed by J. A. Bloyd, W. W. Henderson, F. A. McNinch and O. H. Hunter. These bonds were later to be used with the National Exchange Bank of Wheeling to secure $15,000.00 currency. No further business. Meeting adjourned."

The plaintiff complied with its part of the loan agreement by delivering the bonds to representatives of the Mound City Bank, in the City of Wheeling, on March 9, 1933. The note endorsed by the directors, although undated, was delivered to the plaintiff on that day, and later the proper date inserted. Demand for the agreed collateral was made on March 9, 1933, and it was then agreed between the parties that the collateral to be delivered was that described in the bank's resolution. The transaction having been consummated in Wheeling, and the collateral so agreed upon being then in Moundsville, it is alleged that it was then and there further agreed that the said collateral would be delivered on the day following. At that time the bank was closed on account of the bank moratorium enforced under the proclamation of the President of the United States, but it was expected that it would be opened within a short time. The

bank never opened, the collateral aforesaid was never delivered, and a short time thereafter, April 3, 1933, the bank was turned over to the banking department of the State of West Virginia and subsequently, in May 1933, a receiver appointed therefor.

At September Rules 1934, the United States Stamping Company, the plaintiff herein, instituted its action of detinue against the then receiver of the Mound City Bank, in the circuit court of Marshall County, and at January Rules 1935, filed its amended declaration therein, the purpose being to secure the possession of the collateral agreed to be delivered at the time the loan above mentioned was consummated. In these declarations, possession of a note of $7,500.00, executed by the Monroe County Lumber Company, is sought instead of the note of $12,500.00 mentioned in the bank's resolution above quoted, presumably because the Monroe County Lumber Company notes had been incorrectly described in the bank resolution aforesaid. This action was prosecuted to trial with the result that on March 9, 1935, judgment was entered for the defendant, and that judgment is asserted to be *res adjudicata* as to the plaintiff's claim in this suit against the present receiver and the Mound City Bank, a corporation. The plaintiff herein rests its case upon what it alleges to be (1) an unjust enrichment of the defendant bank at the expense of the plaintiff, and (2) a constructive trust in favor of the plaintiff, and asks that the agreement under which it alleges that specific collateral was to be delivered should be specifically enforced.

The demurrer to the bill rests upon the following propositions: (1) That there is an adequate remedy at law; (2) that the bill is ambiguous, indefinite and uncertain; (3) that it fails to allege any grounds upon which a preferential claim against the assets of the bank can be based; (4) and that upon the question of specific performance of the alleged agreement for the delivery of the collateral in question, the judgment in the detinue action above mentioned is *res adjudicate* as to the plaintiff's claim herein.

The demurrer also avers that there is no allegation that the bonds were loaned by the plaintiff out of surplus funds, nor is there any allegation that a loan was obtained by the defendant bank from the Reconstruction Finance Corporation, it being alleged in the amended bill that the plaintiff had the right under its charter to loan its surplus funds and that in the plaintiff's resolution authorizing the loan, it was stipulated that the same was to be repaid when a loan would be obtained from the Reconstruction Finance Corporation. However, we do not think either of these matters in any wise affects the right of the plaintiff to maintain this suit.

It is clear from the allegations of the amended bill that the loan of the bonds in question was made upon the express condition that the stipulated collateral should be attached to the note which the bank was to give as evidence of the loan; it is clear, also, that neither the plaintiff nor the defendant bank understood that the plaintiff was to assume the status of a common creditor or to become a depositor of the bank. To the contrary, what the plaintiff intended was to accommodate the bank with a temporary loan of securities which were to be later returned in the same form in which the loan was made, namely, bonds of the federal government of the same issue. It is not a case where money was deposited in the bank under circumstances which gave rise to a question afterwards as to whether that deposit was entitled to preferential consideration; such a situation, or some phase of it, existed in *Ream's Drug Store* v. *Bank*, 115 W. Va. 66, 174 S. E. 788; *Cambridge Gas Co.* v. *Lamb*, 117 W. Va. 174, 184 S. E. 566; *Metropolitan Life Ins. Co.* v. *Lamb*, 117 W. Va. 306, 185 S. E. 197; *Hatfield* v. *Lamb*, 117 W. Va. 275, 185 S. E. 229; *Bowne* v. *Lamb*, 119 W. Va. 370, 193 S. E. 563. The transaction here, as we view it, was merely a loan to be secured in a specific manner by certain endorsements and the deposit of specified collateral, and we are confronted with the proposition of whether or not that contract will be specifically enforced under circumstances where a failure to do so would re-

sult in the loss to the plaintiff of a substantial part of the value of the bonds loaned. Upon the allegations of the bill, we think a case has been stated which entitles the plaintiff to relief, by way of specific execution of the agreement evidenced by the bank's resolution to attach the specified collateral to the note it executed to the plaintiff. We are not unmindful of the rule that courts of equity will not, ordinarily, enforce specific performance of a contract for the delivery of stocks, bonds or other evidences of debt. *Hissam* v. *Parish,* 41 W. Va. 686, 24 S. E. 600, 56 Am. St. Rep. 892. But this rule is based upon the idea that, in the absence of a showing of a special value attached to certain stocks or bonds, a person seeking their recovery may be compensated by judgment at law. It is always recognized that, especially as to stocks, a showing of special value may be made the basis of specific execution of a contract for their delivery. *Morgan* v. *Bartlett,* 75 W. Va. 293, 83 S. E. 1001, L. R. A. 1915 D, 300. And in *Hogg* v. *McGuffin,* 67 W. Va. 456, 68 S. E. 41, 31 L. R. A. (N. S.) 491, it is held that specific performance will be decreed for the exchange of shares of stock in a corporation, when the legal remedy is not adequate because the stock has special and peculiar value, is not readily purchased or has no certain ascertainable value, or where money judgment against the party would be worthless because of his insolvency; and that case does not preclude other circumstances calling for specific performance as the only adequate relief. See also *Hubbard* v. *George,* 81 W. Va. 538, 94 S. E. 974, L. R. A. 1918C, 835. Here the plaintiff alleges the insolvency of the Mound City Bank, from which it may be reasonably concluded that the filing of plaintiff's claim as a common creditor or the recovery of a judgment at law, if that could be permitted, would not compensate the plaintiff for the value of the bonds loaned.

Being of the opinion that the plaintiff, under the allegations of its bill, is entitled to a specific execution of its agreement for the delivery of the specified collateral, we are next confronted with the question of the plaintiff's

right as against the assets of the bank in the hands of its receiver. Applying the equitable maxim that equity treats that as done which ought to be done, we hold that in equity the collateral specified in the resolution adopted by the defendant bank, and quoted above, made the plaintiff the equitable owner of the collateral, for the purposes for which it was to be deposited, and that if and when the defendant bank or its receiver disposed of this collateral, either by sale or collection, the proceeds thereof should have been applied to the purchase of bonds of the series loaned to it by the plaintiff, or, if that could not be done, the value of equivalent bonds in cash. The retention of the collateral, or its sale or collection, amounted to an unjust enrichment on the part of the bank, because it either retained property not its own, or received the proceeds of such property without a corresponding obligation. It is not so much a trust as it is the illegal use of another's property, and where property of another is traced into a particular fund, as it can be in this case, the same can be followed either in its original or in any changed or different form, and disposed of in a way which to equity may seem just. *Williams, Trustee,* v. *McCarty,* 82 W. Va. 158, 95 S. E. 638, 100 S. E. 565, 15 A. L. R. 9. We think the collateral in question was, in equity, the property of the plaintiff, the possession of which could in equity have been decreed to the plaintiff, had the same remained in the hands of the bank, and this being true, when the bank's receiver took charge of this collateral, he did so subject to the plaintiff's right thereto. If the receiver disposed of the collateral and the proceeds of such sale, or the collection thereof augmented the fund in his hands as receiver, the plaintiff is entitled to the value of the collateral to the extent of the sale price, assuming that the sale was made at the fair value of the collateral. In a case where the collateral was sold for less than its fair value, we think the plaintiff would be entitled to the actual value of the collateral at the time of its sale, notwithstanding the sale price.

We do not think the result in the detinue action, mentioned in the defendant's demurrer and the opinion of the trial court, is *res adjudicata* as to the plaintiff's right with respect to the collateral involved therein. That was a suit against the then receiver of the Mound City Bank, the bank not being a party thereto. Detinue is a possessory action, and does not lend itself to the adjustment of equitable rights. Ordinarily, where securities are deposited as collateral for the payment of an obligation, the title thereto becomes vested in the holder of the obligation secured thereby; but that is where there has been a complete legal transfer of the collateral. In this case we have only an executory agreement on the part of the bank to deliver collateral which we think is enforceable, but, in fact, the legal title did not pass from the bank to the plaintiff. Therefore, the plaintiff's right, if any, was an equitable right which it could not assert in the law action of detinue. That it made a mistake in the assertion of its remedy does not serve to destroy its equitable right.

The ruling of the trial court will be reversed and the case remanded to the circuit court to be further proceeded with along lines not inconsistent with the views herein expressed.

*Reversed and remanded.*

KENNA, JUDGE, dissenting:

In my opinion, the amended bill is faulty in that it does not show that the pledge of the notes, aggregating thirty thousand dollars, was based upon a definite and enforcible contract between the Mound City Bank and Stamping Company. The bill alleges that the Bank was advised (by the plaintiff by implication) that Stamping Company had no authority to informally make the loan, but that if it made the loan it would have to be approved by the plaintiff's board of directors. Passing over the Bank's contention that, because the bill alleges that the plaintiff's charter empowered it to loan surplus funds

and fails to allege that the loan constituted funds of that kind, the transaction was *ultra vires,* we find that the bill alleges that on March 9, 1933, at the office of H. C. Ogden, one of the plaintiff's directors, those directors met and adopted the following resolution:

> "Upon motion duly seconded and carried, the President and Treasurer were authorized to loan the Mound City Bank, Moundsville, W. Va., Fifteen Thousand ($15,000.00) Dollars 4th Loan 4¼ Liberty Bonds, taking the bank's note for that amount bearing six (6%) per cent interest, endorsed personally by four bank directors; said note to be secured by collateral of two to one in trust deeds, with the understanding that note will be paid just as soon as bank obtains a loan from the Reconstruction Finance Corporation; payment to be made in bonds, the same as loaned."

The bill also alleges that on May 17, 1933, the receiver of the Bank furnished plaintiff what purported to be an undated copy of a "resolution" adopted by the Bank's board of directors which the bill sets forth verbatim as follows:

> "On motion of Mr. Henderson, seconded by Mr. McNinch that this bank borrow from the U. S. Stamping Co. $15,000.00 Liberty Bonds and that we secure this loan of bonds by putting up the following notes: Monroe County Lumber Co. $12,500.00, W. W. and J. W. Henderson $9,000.00 and J. E. Bloyd, Jr., $5,000.00.
> "This note was signed by Mound City Bank and endorsed by J. A. Bloyd, W. W. Henderson, F. A. McNinch and C. H. Hunter. These bonds were later to be used with the National Exchange Bank of Wheeling to secure $15,000.00 currency. No further business. Meeting adjourned."

The only other allegations of the bill bearing upon a contract entered into between Stamping Company and the Bank relate to what "was understood", "was repre-

sented", and to the manner in which the Bank failed and refused to carry out its obligation under the contract; this despite the showing of the bill that, "The said Bank was advised that the plaintiff corporation had no authority informally to make said loan."

To my mind, the bill of complaint fails to allege a mutual agreement or, in the terminology of primary contract law, a "meeting of minds". According to the bill's allegations, it is unavoidable to treat the resolution of Stamping Company's board of directors as being the only authorized offer made by Stamping Company. Any contract or offer of this nature made by Stamping Company required the approval of that company's board of directors. There is no allegation contained in the bill that the board of Stamping Company ever approved a contract, the only allegation being that its directors did approve its unaccepted offer. The allegations of the bill plainly show that the Bank did not accept the offer of Stamping Company.

Attention has already been directed to the fact that the Bank's resolution materially varied in terms from that of Stamping Company. To my mind, the utmost that can be said is that the resolution of Stamping Company's board amounted to a proposal, and the only further substantial allegation is that the Bank made a counter proposal of equal dignity; this for the reason that both parties, according to the bill, knew that a formal agreement on the part of Stamping Company was required before either would be bound. There is no allegation that the directors of Stamping Company acted upon any counter proposal that the Bank made, nor that Stamping Company made any other than the one proposal, which the Bank, according to the bill's allegations, failed to accept. Based upon the allegations of the bill, there could, of course, be no binding contract concerning the collateral other than that which was entered into by express agreement.

Furthermore, Stamping Company, under the bill's averments, is to be regarded as an intended pledgee. De-

livery of possession of the property intended to be pledged was necessary in order to create a lien securing the loan. *Williams* v. *Gillespie,* Pt. 4 Syl., 30 W. Va. 586, 5 S. E. 210; *First Nat. Bank* v. *Harkness,* 42 W. Va. 156, 164, 24 S. E. 548, 32 L. R. A. 408; *Downey* v. *Fire Insurance Co.,* 77 W. Va. 386, 397, 87 S. E. 487. A chancery court will not apply the maxim which treats that as done which ought to have been done, when the rights of third persons have intervened. Jones on Collateral Securities (3d Ed.), sec. 28, p. 36, *et seq.* The appointment of the receiver for the Bank fixed the status of its creditors with the property which it is contended had been pledged still in the Bank's possession.

The term "unjust enrichment" is entirely too expansive and indefinite to be used in a clarifying sense. Therefore, I shall not undertake to comment upon it.

Reference to 44 West Virginia Law Quarterly 139 will make readily available both the Virginia and West Virginia cases bearing upon pledges.

Of course, Stamping Company, even though not treated as a pledgee, could still collect the note it accepted made by the Bank and endorsed by four of its directors. The allegations of the bill disclose a plain legal remedy and do not show that it has been pursued.

For these reasons, I cannot accord with the court's opinion.